receiving this record and the a e p p a uh... this court looks to the last reason state court opinion to determine whether there was an unreasonable application of either factor law and with respect to the jury instruction issue mister turner's case we look to the last recent state court opinion it was not only unreasonable is dead wrong is completely wrong jury instruction challenge to the preponderance-laden predisposition instruction was rejected and it's actually uh... in the excerpts uh... on uh... page forty four they found that instruction did not lesson the prosecution's burden of proof because the jury instruction quote closely resembled the instruction approved in people versus fitch in fact it didn't at all there is no mention in the jury instruction in people versus fitch of the words preponderance of evidence it's not there there is no men that they can't make it was wrong just to use the word preponderance of evidence your honor i think in the context yes i think in the context is that you can't use preponderance of the evidence the current instruction that's in use in california and this case obviously predates that so the instruction used in mr turner's case is not the one that's used now the current instruction actually says as we put it in our reply brief if you find by a preponderance of the evidence that the defendant committed a prior sexual offense that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charge of offense that's the instruction used now in california if you can explain to the jury adequately that preponderance for the prosecution it's pretty clear that it's the prosecution  for affirmative defenses, entrapment, arrest but here there's no doubt that what they were talking about was that the prosecution had the burden by preponderance of the evidence to present some evidence to show that that uh... mr turner was connected with the prior offense more than that it went even beyond that your honor what it said was well it's not only a little long, it's a little repetitive well and hence it said it eight times but it also said it in different contexts what your honor is talking about is the first context the first context was that you have to find by a preponderance of the evidence that he committed the prior offense then the next step is the one where they start getting in trouble because the next one they start saying if you find that he committed the offense then that can be used by a preponderance of the evidence in determining whether the prosecution has shown he has a character trait to commit this offense so it's that's the problem is they say the prosecution can prove his character trait of committing these sex acts is sufficient and you can use an H to give it whatever weight you want as a jury that's what they were instructed is sufficient to show specific intent to commit this crime that's the problem the prosecution can meet under this instruction the prosecution can meet its burden of proving the elements of the charged offenses with the preponderance of the evidence we're also concerned that the timing which also was different both in Fitch and in this court's opinion in LeMay the timing also completely wipes out the presumption of innocence unlike LeMay we don't know when the instruction was given in Fitch it doesn't say unlike LeMay where this court specifically says that it was given prior to this evidence being given in this case the preponderance instruction was given after the witness testified as to the prior act before the defense case so you're starting the whole defense case with the jury being told that you have to evaluate this evidence to see if the defendant can produce more evidence than the prosecution and that's just not the way we try cases in this country did it come at the end of the presentation I think there were several witnesses there were a couple of police officers afterwards that testified about this prior incident it wasn't just the victim it wasn't just the victim there was a police officer that said he denied it when he was questioned about it so there was more evidence about it and then it was at that point that they gave the instruction wasn't it well I think they gave the instruction well your honor may be correct I may just have misread where it is that's what I kind of thought yeah I think they gave it um I thought they gave it after I can't think of her name the the prior girl's testimony but uh it could have been after the police officers that I'm not positive your honor um uh let me ask you this so what's your what's what's your what clearly established law did this jury instruction violate by the United States Supreme I should say clearly established law by the United States Supreme Court well I think that on this one the clearly established Supreme Court law is uh um Sandstrom versus Montana Patterson versus New York in which the Supreme Court says the due process clause of the 14th Amendment requires the prosecution to prove every element of a criminal offense beyond a reasonable doubt so that's the clearly established Supreme Court law that this violated now even if we were to agree with you don't we have to get to break on this issue well I don't think so first of all I think it's more structural than it is harmless because this you really can't divine from this what what uh the jury did we have we have no way of knowing how this affected the jury and this really goes to the actual what I would say is the core it's it's far more a structural defect than a harmless error defect in this case because it it you can't say what they did with this evidence we're saying they didn't know what to do with this evidence um if your honor is inclined to go that way in this particular case what happened is the jury did give up uh three it was it was not a slam dunk case even with this evidence even with this instruction they had substantial testimony re-read they have three notes it it was it it was not uh an overwhelming case for for the for the government in this particular case but I think it goes more for structural error I don't really think it's it uh lends itself to harmless error now you know they're really you read the instructions in their entirety from the beginning to end and you know the court does repeat several times that the government had the state that is not the government you know the state of california had the burden to prove the defendant guilty beyond a reasonable doubt several times I think a couple times there really isn't any any you know I came away with a feeling that the jury knew that the government had to prove its case beyond a reasonable doubt I you know I that's why I tried to make a point in my brief I think there's a distinction here and and I read the same thing that your honor did um read all the instructions read the instructions and the supposed limiting instructions as well as the ending instructions um uh first of all if we take both the limiting and the ending instruction what we have and I don't numbers do matter some we have 16 different mentions to this jury of preponderance in the evidence I think we have three mentions of reasonable doubt that's where the the difference is but assuming they could get through that and figure what it is I think what the jury did and this is what we tried to brief in the opening brief what they were told is the government has the burden of proving the offense the charged offense beyond a reasonable doubt okay the troubling thing I'm having here is I think the jury could very easily in fact that's really what it says could very easily have said the prosecution only needs to prove specific intent by a preponderance because the judges told you the jury that the character trait the character trait of intending to commit sex with an underage girl can be proved by preponderance of the evidence and that's sufficient and you the jury can give whatever way you want for that so I would tentatively agree with your honor that there are instructions in there because there are that say you have to prove the offenses the prosecution has to prove the offense beyond a reasonable doubt although the context of that I want to say the context that's a little different where that came up really was after all this was read then he says now you've heard all this evidence about about other act evidence and the government doesn't have to prove you don't have to find him guilty of the other act you have to find him guilty of these acts that's the context of where that came in so it's slightly different than where it is I think that if we look at Lemay and I think Lemay is also a federal case obviously 414 I want to say something the court accepted and I disagree with the opinion but the court accepts the federal statute only because it's filtered through 403 the balancing here what we have to do and that's to avoid unfair prejudice what we have here are two problems in his case one is the unfair prejudice independently the jury instruction is unfair to him and there's no examination of that unfair prejudice by the California courts they don't filter that out in their calculus at all they don't even look at the right prejudice what objections were made when that instruction was given? well what happened as far as I can tell your honor is the defense proposed an instruction and the prosecution proposed an instruction the defense instruction was in the objective to the prosecution's instruction it was denied or overruled excuse me and the judge gave which is the only place I can imagine where I can see where this instruction came from seemed to come from the prosecution so the judge gave the prosecution's instruction over defense objection and in lieu of the instruction submitted by the defense so that's what happened in this trial um I want to just very very briefly talk about and that was uh that was um in uh Kalchik uh this one as far as I can tell I can't see where this instruction came from I I don't the one used in Mr. Turner's case um because it was not the one used in Fitch so so I don't know where the current one I read your honor came from Kalchik yeah but uh I mean you can go to the library and see whether that you know was a Kalchik instruction and I looked and it wasn't this one um did my recollection it was not this one your honor not not anywhere near this one so I don't know where the one used actually came from except it was submitted by the prosecution in this one was it typed up or was it printed uh I don't know the answer to that your honor I don't know from the record on that one I just wanted to very briefly talk about uh just make it clear what my my the last two sentencing issues are so I'm not abandoning those and the reason is because it could affect 100 years of a sentence um the last sentencing claim that I think makes the the second to last one more clear on the last sentencing claim we said it was air to have sentenced him as a habitual sex offender and a habitual criminal now the California Supreme Court has in fact said subsequent to Mr. Turner's case but hasn't said has in fact said that the California legislature authorized that that was in a case we cited in our brief and so our argument on that issue is that that's arbitrary the problem comes with 667.71 where he got three consecutive sentences for exactly the same thing and there's not a whiff's worth of indication that the California legislature has ever authorized that they can't cite an opinion that I can't find an opinion nobody can find an opinion that says that has been authorized by the California Supreme Court by the California legislature in consecutive sentences three convictions for 667.71 it's only charged as an information one time it's not charged on each one of the counts it's one sentence in the information that says he's a habitual sex offender and if you look to that statute it says to be a habitual sex offender you have to have a prior plus one conviction in this case then 25 to life so he has he got that one time he got it but what the judge did is he gave him 25 to life doubled it on count two consecutive to count three consecutive to count count three so that's 150 years so he got 150 years for something of the California legislature my my seeing of it I see not an indication at all that it's anything more than a one-time deal you can only be convicted the California Supreme Court ultimately said it was okay not not not they didn't your honor they absolutely did not under 667.71 they did not they said another in in a different context as to you can sentence somebody as a habitual sex offender and habitual criminal that's okay they have never said you can sentence somebody three times as a habitual sex offender what's the clearly established law that would preclude that it would violate what's the clearly established law by the United States Supreme Court just have to turn for a second here oh actually it's I won't I'm going to get the state wrong it's something versus Hudson I want to say Missouri okay Missouri versus Hudson in Missouri versus Hudson what Chief Justice Rehnquist said in his opinion is that essentially you can avoid the double punishment issue as long as it is specifically authorized by the legislature Paul O'Connor for respondent I have a number of points to make in response to Mr. Broderick's remarks first of all regarding the other crimes jury instruction the trial court expressly instructed the jury that they could reach a guilty verdict only if they were convinced beyond a reasonable doubt that petitioner committed the offense charged in the present case so that was that was an extremely clear instruction that was given to the jury that was given at reporter's transcript page 473 lines 13 to 18 it's referred to repeatedly in my brief also sterling versus roe a case I cited in my brief says that we can look at other instructions and the party's arguments to show that a propensity instruction does not violate due process and and the same is true in this case we can look at the other instructions that were given for example that the jury was instructed that the prosecution must prove each element beyond a reasonable doubt they were instructed that if there's a reasonable interpretation of the facts which points to innocence then the defendant has to be acquitted they were instructed that the defendant is presumed to be innocent and that means that people have to prove guilt beyond a reasonable doubt they were instructed that if there's reasonable doubt the defendant has to be acquitted they were instructed that there has to be a union of acts and intent which clearly means that the prosecution had to show something more than there was a prior offense and they had to show something more than the defendant was simply predisposed to commit these crimes there had to be a union of an act meaning the current offense and an intent meaning a mental state that coincides with the current offense now in light of all these instructions  would have been interpreted by the jury to allow a verdict based only on the prior acts and the predisposition to commit sex offenses also we can look at the party's arguments in helping to determine how the jury would have understood their instructions the prosecution during his first argument discussed the evidence relating to the current offense the evidence corroborating the victim's testimony the victim of the current offense the defense attorney emphasized that the prosecution had the burden of proving the offense beyond a reasonable doubt he emphasized that a couple of times very strongly at the end of his argument also importantly the prosecutor in his rebuttal argument acknowledged that the defense attorney's description of his burden was correct he did not dispute that description of his burden so that's an important point also sterling indicates that if the majority of the evidence concerns the current offense that would also suggest that the jury understood that it was supposed to find the defendant guilty or not guilty of the current offense beyond a reasonable you know guilty beyond a reasonable doubt likewise in the present case the bulk of the evidence concerned the current offense not the prior offense i submitted a number of supplemental authorities about a week ago one of them was a case called smith versus plyler and that concerned a pre-1999 propensity instruction just as we had a pre-1999 instruction in the present case smith denied habeas relief noting that other instructions and the party's arguments emphasized the beyond reasonable doubt standard smith cited regalado a california appellate court case favorably which is a case that we've relied on in our brief we cited regalado for the proposition that the jurors would have understood that the disposition evidence is to be assessed along with all the other evidence to determine if the elements have been proved beyond a reasonable doubt also smith said that the state court's denial of relief was reasonable based on a common sense understanding of the instructions in light of the events that transpired at trial in other words the totality of the instructions the party's arguments and the evidence that was presented in the case again you know the bulk of which concerns the current offense not the prior offense now another point i wanted to mention was the you know the controlling u.s supreme court precedent whether the state court's disposition the state court's denial of relief in this case is contrary to or an unreasonable application of u.s supreme court precedent well the bottom line here is that the u.s supreme court has not decided if a state law would violate due process if it permitted prior crimes evidence to show propensity and estelle v maguire a 1991 u.s supreme court case left this issue open the ninth circuit in the garceau case in 2001 noted this the supreme court had left left this issue open and and again the supplemental authorities that i cited uh last week again indicate that this is still an open issue there's still no direct supreme court authority on this point so there's no way that the state court's denial of relief could be contrary to any u.s supreme court precedent um with regard to the lemay case of course that case says that federal rule of evidence 414 does not facially violate due process california evidence code section 1108 is modeled after federal rules of evidence 413 through 415 also lemay says that that federal rule of evidence 403 which is discretionary exclusion of evidence safeguards the right to a fair trial ensures that devastating evidence with little probative value won't go to the jury likewise california evidence code section 352 is similar to federal rule of evidence 403 um it's also a discretionary exclusion exclusion of evidence where uh that probative value is you have all this in your brief haven't you well a lot of it yeah and there's also some material my supplemental in my supplemental authorities um would you just address counsel's argument on the very last point that he was making on the the sentencing things i have i have a couple of i have a couple of points on the sentencing very last point okay um was that missouri v hunter or was that that that the issue he raises okay well well first of all one thing i should definitely point out is that actually he said the legislature the california legislature has never authorized right that is that is actually a three consecutive sentences right that's that's actually uh incorrect according to uh murphy the california supreme court case that i that i cite in my brief according to murphy uh section 667.71 authorizes separate consecutive sentences for each new conviction murphy says this at 25 cal fourth at page 151 um it says uh the defendant is being punished for a new for new criminal conduct which is one or more specific uh felony convictions there's nothing in section 667.71 that precludes additional consecutive terms when the additional terms arise from separate independent counts uh based on current point seven one authorized the consecutive sentences that were imposed in this case and that is an opinion of the california supreme court which of course is the final arbiter of state law well when the jury came back with his verdict how'd that read um well uh i guess i would have to get their reportage transcript but i mean i i assume that there would be a verdict as to each count uh counselors are you represented that that in the information each the statement about habitual offender was not contained in each count of the information well well yeah i mean the thing the thing is this is an important point to make too and and murphy makes this point is that section 667.1 the habitual sex offenders law is a recidivist punishment statute uh murphy makes that point again at page 151 and that belies uh petitioner's claim that 667.1 667.71 is an offense it's not an offense it's it's a recidivist punishment statute it's a sentencing scheme so the fact that they allege it only once in the information really you know it's not important i mean it's it's a sentencing scheme not an offense so and murphy makes that clear and again murphy is a california court decision so that's a final you know binding interpretation of state law and then finally the point i wanted to make it on missouri v hunter i mean given the fact that that that consecutive sentences are authorized by state law um missouri v hunter actually helps us um because it says as the federal defender pointed out that where the legislature specifically authorizes cumulative punishment under two statutes it doesn't matter if this two statutes prescribe the quote-unquote same conduct cumulative punishment is acceptable and and again because section 667.71 has authorized consecutive sentencing uh consecutive terms uh and again that's that's the opinion of the california supreme court in murphy at page 151 missouri v hunter supports us so that takes care of those two issues um we understand your argument okay okay all right i agree if murphy says what he says it says then on that issue i lose i don't think it says what he says it says and murphy i think says what i said it says but but but he's right it says what he said said it says that it's authorized and then missouri says okay i don't think it says that but what i wanted to address was uh because this goes to lamay and the supreme court president which was our second issue um and what he said about uh uh no controlling supreme court case that's a catch-22 that this court didn't deal with in lamay that i think was a mistake um what this court did is they they said we're going to look at historic precedent to determine um what is fundamentally fair and they carved and the court carved out an exception for what they call a lustful disposition it's exactly the same language exactly the same citations used in people versus fish um but lustful disposition when you look at those lustful disposition cases they all refer to sex between the same two people they all do they're all about sex between the prior acts between the same two people and if you even read them in the michigan case that's cited in lamay and cited in fish and you go back they even say it's there to prove opportunity opportunity what that's important is because what that meant is all those cases that are cited all predated state evidence codes they predated the federal evidence codes so because they predated the federal evidence code what happens is when the states 100 years ago started getting evidence codes and the federal government came with an evidence code they took all those cases and made them what we now have as 404 b other act evidence opportunity intent between the same two people in the same act the reason there is no supreme court case and i and i agree that's a problem is because it never could come up it couldn't come up because it was so accepted across the united states in every jurisdiction that you couldn't use predisposition to prove conduct in conformity and two separate offenses but the only cases they came up were cases that were like 404 b cases either in the state context or the federal context that people were attacking those cases as showing those were fundamentally unfair the court would say no no no but we're not going to reach the other one because it could never get to them so that may be a catch-22 that i can't get over with the adpa but that's the problem the fact that the court says we have never held that doesn't mean it's not fundamental because i just want to make that clear okay thank you matters stand submitted we're going to uh kathleen we'll talk to your students where are they can they wait all right waiting uh international program and help me bring them all here today thank you so much for taking some time with us we we have about 16 students here oh they're here for nine months yes okay so this is the university of san francisco law school international students and uh they've had a tour of the courthouse and uh yeah i see we have them here from ethiopia u.s i don't know how that person got in here czech republic taiwan spain czech republic rwanda france french polynesia mexico brazil mali philippines brazil uzbekistan netherlands and china getting some quite a group got a few questions for who has some questions maybe they didn't all right so you just smile we have a few things to make well maybe i ought to ask how have i changed well i haven't practiced law since 1965 so uh but just looking back at that time things were certainly simpler the cases were not as uh complicated uh you know miranda was decided in 1965 and um when i got on the federal court in 1967 and uh that's where you really learn about the practice of law um it was about that time that class actions came to the floor draft cases came to the floor uh arisa came to the floor and title seven came to the floor and there are always new new legislation new developments many environmental cases and um now we're getting a batch of these marijuana cases and um you know i never forget the the words of um of charles dickens and bleak house which would be a good book for everyone to read in which he he says that the um uh overriding principle of the english law is to over is to always keep itself in business and that's what happens uh the new cases come on and uh you know you're supposed to laugh when i say that and it's true if you stop to think about it we move from one area of the law to another new legislation you got lawyers now that do nothing but read insurance policy for a living and offer opinions so um it keeps expanding i i know when i graduated from berkeley and uh in 1950 there were just 70 students in my class and the entire law school had uh i don't know maybe 200 and uh now you look at the classes that come out of law school just you know by the hundreds sometimes a thousand and of course when i was in law school at berkeley there were very very very few uh minority students there we had one african-american student we had one asian student and um we had three women in our class now you have more women in many law schools than you have men and i think that's a good thing i think in many ways uh well i don't want to upset the men who are here but in a man in many ways the women are better advocates and um than the men i mean that's just the reaction i've had we didn't have any women here today but uh did we yeah the first mr hassell's case mr hassell's case that's so long ago i can't remember and uh to me i mean this is my reaction i like to see some of the women that come have come before panels that i've been on they just stand there like they're my english teacher and they just look at you and they're and they're just telling you the way it is they don't look at a bunch of papers and start reading and they go right to the heart of the matter so there have been changes and i think it's good and i like to see a lot of diversity in the law schools and i like to see a lot of diversity in the bench and so that's another big change too i could spend a lot of time on that and in la when i got out of law school the la county bar didn't admit blacks to the bar until the 60s and women didn't serve on federal grand juries and um so there's been a lot of changes and a lot of progress and um i think it's a good thing so stay with it and what are you going to do with all this learning on you're going to all go back to your countries and uh and um what are you going to do when you get there start revolutions or uh well they're bringing the what we call the rule of law so um but you have to remember this we had a president first president of mexico his name was benito juarez and you know what he said he said for my friends justice all others the law so try to remember that justice is the most important ingredient of them all anyway you know uh kathleen can we just ask you about when i told the students how you're visiting us from the eighth circuit have you sat with other circuits as well and how are you liking doing that well i have set with other circuits and i like it every place i go everybody is very courteous and helpful and perhaps they might be interested in understanding that in the federal system so long you're on active status which my colleagues this morning are the rules with minor exceptions do not permit you to sit outside your own jurisdiction but when you get old like i am and become a senior then you're permitted to go other places if you're invited to come and i thank judge schroeder in the ninth circuit for inviting me to come we don't have a lot of medical marijuana cases out in fun and and i'm happy to be here thank you for coming but i think in places like nebraska and kansas it just grows out in the fields i'm an expert i am an expert on hemp because it grew along it grows along every fence line and so forth and a friend of mine who was in the nebraska legislature for about 50 years said i don't know what all the fuss is about i used to smoke hemp behind the barn when i was in grade school so i don't know that well you know when i was in high school here back in the junior high school you know 38 into the 40s i don't think that that marijuana was illegal and and but i don't know anybody that ever smoked it see as soon as you make it forbidden then everybody wants it so uh but i'm that's what that's what i remember we used to in spanish classes we'd sing you know la cucaracha marijuana kefamar you know and that was it you know and people didn't even smoke then now uh times have changed uh yes i would like to ask you how do you feel about the problem of split and circle what do you think are the main reasons and uh that is coming to a difference between the same and do you feel somehow bad about that well i'm not sure uh i mean you know the fact that judges at an earlier time had made rulings oh yeah circuit conflict circuit conflicts circuits split well um we think all the other circuits are wrong when they're in conflict with our agency well it's good to have uh you know conflicts and uh yeah sometimes i think the supreme court waits to see kind of what the various circuits are going to do with a particular issue they like to see if there's going to be a different for you before they'll take an issue yeah we don't all march to the same drummer you know i mean it's uh they're pretty independent at least some of us are firstly your honors and my question is that this morning we heard some few cases and may i know what is the procedure of the court as to who will write the opinion okay well um after we adjourn then normally we go and we have a room over here we sit and talk about these cases we don't talk about the cases before we come here okay and so we talk about them and uh then you know basically the the oldest active judge is the senior that's me and um i think i'm older than you are and uh so you know we i'm supposed to make the assignments but we work those things out among ourselves so uh you know someone wants to work on this or work on that you know we we get along nothing rigid about it and uh then we see our court i think kathleen has told you we how many cases we cross this year ten twelve thousand was it 12,000 okay the supreme court has it easy they have 45 cases we'll do that many this week and um but um anyway i guess that's it and i want to thank professors for coming here and kathleen i first met kathleen when she was working in boise idaho and uh she said and she was running that court over there she knew every case and every lawyer and what was going on and so she told me she'd like to come to san francisco well i knew she'd work for a district judge and then she worked for another one and i said well kathleen it's time for you to go out in the find your way and she said no no she said you don't understand judge i'm a um i'm a ninth circuit junkie i've got to come back and work here and she's been here and she's been a great asset to us so go back go back to your countries and tell people to be free and to think for themselves and uh and the most important thing that we have to do in this world today is liberate women we we you know more than half the people on this earth are women and we need to be grateful for that but in so many places women are oppressed and treated as property and uh uh it's uh it's terrible and and uh uh i just hope and you know this century that all that's going to stop and that uh and that the men will stay home and let the women work so okay thank you um you can say that you can email me questions later i'll show you the way out yeah i can spend most of the day here but are you in a great country i can't yeah i'm sorry i'm going to have to thank you so much um so
judges: Pregerson, Beam Paez